**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2633-24

LORD & SHEPHERD
PROPERTIES, LLC,

     Plaintiff-Appellant,

v.

NJ TEXTILES LLC,

     Defendant-Respondent.

_____

     Argued May 20, 2026 – Decided July 15, 2026

     Before Judges Currier, Berdote Byrne, and Jablonski.

     On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. LT-006588-24.

     Crew Schielke argued the cause for appellant (Onal Gallant & Partners PC, attorneys; Crew Schielke, on the briefs).

     Lisa M. Leili argued the cause for respondent (Porzio Bromberg & Newman PC, attorneys; Lisa M. Leili, of counsel and on the brief).

PER CURIAM

In this commercial eviction action, plaintiff Lord & Sheppard LLC appeals from final orders dismissing its complaint with prejudice and denying reconsideration. Plaintiff sought to evict defendant NJ Textiles LLC for allegedly operating as a retail store in violation of its lease, which limits defendant to wholesale operations and requires compliance with applicable zoning laws barring retail sales.

Plaintiff sent defendant a notice to cease for the lease violations in May 2024. After later retaining a private investigator who reported defendant continued to conduct retail sales, plaintiff sent a notice to quit in November 2024. The issues before the trial court were whether plaintiff could prove defendant breached the lease's covenants and whether adequate notice was provided, thereby entitling plaintiff to eviction pursuant to N.J.S.A. 2A:18-53(c)(4). In the middle of trial, before plaintiff finished presenting its case, and without admitting any exhibits into evidence, the court sua sponte dismissed the case, ruling both the notice to cease and the notice to quit were inadequate.

After careful review, we reverse and remand for a new trial. The record demonstrates the notice to cease and the notice to quit were adequate. Furthermore, the trial court erred by dismissing the case before either party

2

finished presenting its case. Whether defendant breached the covenants against retail sales must be decided on remand after each party is afforded a full opportunity to be heard.

I.

On January 1, 2020, defendant, a textile seller, signed a five-year lease with plaintiff's predecessor in interest for a commercial building in Clifton. The lease was for 6,500 square feet of the second floor. Section 3 of the lease limits defendant's use of the property to wholesaling textiles: "The Demised Premises are to be used and occupied only for the wholesaling and warehousing of textiles and for no other purpose whatsoever." Similarly, Section 25 requires defendant to comply with all applicable laws, including municipal ordinances. According to Clifton's zoning map, the leased property is in an M-3 industrial zone, which does not permit retail sales.[1]

In the event of a violation of any of the lease's non-monetary covenants, Section 38 provides defendant with fifteen days to cure after receiving notice

---

[1] Despite retail sales being prohibited in these zones, several retail businesses operate on the first floor, and, according to plaintiff's property manager, the zoning officer informed her that retail was permitted on the first floor. Defendant maintains the property is contained within a B-C Overlay zone "that permits retail sales in certain circumstances."

A-2633-24

from plaintiff. Section 38 also grants plaintiff a right of entry for uncured defaults.

On May 31, 2024, plaintiff sent defendant a "Notice to Cease" letter, which stated: "YOU ARE HEREBY NOTIFIED TO CEASE operating as a retailer in the leased premises immediately." In the letter, plaintiff noted that conducting retail business violated Section 3 and Section 25 of the lease and constituted a default. Plaintiff gave defendant fifteen days to cure the violations before it "pursue[d] all available remedies."

Defendant responded to the letter on June 11, 2024, and disputed that it was operating as a retail store. Instead, defendant noted it "is a well-known wholesaler of textiles to the design industry" and characterized the notice to cease as "merely another bad faith attempt to push the Tenant out of the Premises purely for financial gain."

There were no further developments until October 2024, when plaintiff hired a private investigator. On October 25, the investigator entered defendant's business and purchased three yards of cashmere at a "retail value of $35.00" and was given a receipt.

A-2633-24

On November 5, 2024, based on this apparent evidence of defendant's continued retail sales, plaintiff sent defendant a notice to quit the premises, which stated:

> Despite Landlord's Notice to Cease . . . the Tenant has not cured the breaches or ceased the unauthorized activities as directed, continuing to operate retail activities in the building, resulting in the ongoing breach of the Lease. We have video evidence obtained by a private investigator sent to the Premises to prove that Tenant continued retail operations beyond that date, as late as October 25, 2024. The video captured by the investigator, the receipt of the purchase for a retail purchase for [$]35 and the summary provided by the investigator are all attached herewith.

Defendant did not quit the premises.

According to defendant's version of events, it has been operating on the property since 2008. Originally, it operated on the third floor, but in 2018 it agreed to move to the second floor to help resolve a dispute between other tenants. To incentivize defendant to move, plaintiff's property manager told defendant the new location on the second floor "would allow [defendant] to expand its business to a retail presence by making it more accessible to the public." Defendant agreed to move and then began conducting retail sales. After signing the five-year lease beginning in January 2020, defendant claims plaintiff "ratified said course of conduct by allowing . . . [defendant] to engage

5

in the occasional retail sale[]." However, defendant maintains it has always remained "primarily a wholesale business, and occasionally sold to retail customers after said retail sales were encouraged by [plaintiff]." After defendant exercised its renewal option in February 2024, plaintiff allegedly "set upon a course to effectuate its apparent motive to evict [defendant] so that it could rent the Premises at a higher rate," motivated by the fact that defendant pays rent at a below-market rate.

Additionally, defendant claims it immediately ceased conducting retail sales after receiving the notice to cease in May 2024. With respect to the sale to the private investigator, defendant maintains the sale "was an isolated event." Moreover, defendant asserts "the employee that mistakenly made the $35.00 retail sale was reprimanded" and "was asked to sign a letter on November 6, 2024 acknowledging that [defendant] is exclusively a wholesale business and that if any future retail sales were engaged in, said employee would be terminated."

On November 18, 2024, plaintiff filed a summary dispossession complaint against defendant. At trial, following the testimony of the first witness, defendant moved to transfer the case to the Law Division. The court did not address that motion and instead sua sponte dismissed the case with

6

prejudice.  Plaintiff then moved for reconsideration, which the court denied. This appeal followed.

II.

Although the trial court did not cite to the rule, it appears to have sua sponte dismissed the complaint pursuant to <u>Rule</u> 4:37-2, which is applicable to trials in the Special Civil Part.  <u>See</u> <u>R.</u> 6:5-1.  A trial court's ruling on a <u>Rule</u> 4:37-2 motion is reviewed de novo.  <u>Holm v. Purdy</u>, 252 N.J. 384, 399-400 (2022).  Rulings on motions for reconsideration are reviewed for abuse of discretion.  <u>Branch v. Cream-O-Land Dairy</u>, 244 N.J. 567, 582 (2021).

A summary dispossession action brought pursuant to N.J.S.A. 2A:18-53, which is applicable to commercial tenants, is "designed to accord landlords an expeditious and inexpensive means of regaining possession of leased premises as authorized by statute."  <u>Daoud v. Mohammad</u>, 402 N.J. Super. 57, 58 (App. Div. 2008).  One of the grounds for eviction listed in N.J.S.A. 2A:18-53 arises when the tenant

> commit[s] any breach or violation of any of the covenants or agreements in the nature thereof contained in the lease . . . where a right of re-entry is reserved in the lease for a violation of such covenants or agreements, and [the tenant] shall hold over and continue in possession of the demised premises . . . after the landlord . . . has caused a written notice of the termination of said tenancy to be served upon said

7

tenant, and a demand that said tenant remove from said premises within three days from the service of such notice.

[N.J.S.A. 2A:18-53(c)(4).]

There are two distinct forms of notice a commercial landlord may provide to a tenant who has breached one of the covenants in the lease: the notice to cease and the notice to quit. Only the notice to quit is required by N.J.S.A. 2A:18-53(c)(4). The notice to quit is not meant to "aid[] the tenant in changing his conduct." See Ivy Hill Park Apartments v. GNB Parking Corp., 236 N.J. Super. 565, 570 (Law. Div. 1989), aff'd, 237 N.J. Super. 1 (App. Div. 1989). Instead, "[t]he obvious reason is to permit the tenant to adequately prepare a defense, since the tenant may contest an alleged breach of a covenant or may raise equitable defenses." Ibid.

The notice to quit must "specify the cause of the termination of the tenancy." N.J.S.A. 2A:18-53(c)(4). The Supreme Court had interpreted this language to mean "to name in a specific or explicit manner; to state precisely or in detail, to point out, to particularize, or to designate by words one thing from another." Carteret Props. v. Variety Donuts, Inc., 49 N.J. 116, 124 (1967). Thus, in Carteret the Court deemed the following notice insufficient: "[T]he tenancy is terminated for the reason that you have committed a breach

A-2633-24

of that covenant in your lease providing that the store premises aforesaid are to be used and occupied only for the retail sale of food and allied products." Ibid. (internal quotation marks omitted). The court reasoned that the notice "contains no particularization, no explicit or detailed statement as to the action or conduct of defendant which allegedly constituted such a violation of the use covenant as warranted a demand for a judgment for possession." Id. at 125.

The trial court found the May 2024 notice to cease was insufficient because it "was not based upon any specific act." The court also found the November 2024 notice to quit insufficient because the copy submitted at trial was illegible, with key dates and text "blanked out." In denying reconsideration, the court also noted that defendant cured the breach outlined in the May 2024 notice to cease. Thus, the court reasoned the October 2024 retail sale of cashmere constituted a new breach, and, pursuant to the lease, required an additional notice to cease, allotting another fifteen days to cure, prior to serving a notice to quit.

The trial court erred in applying the heightened notice requirement of N.J.S.A. 2A:18-53(c)(4) to the May 2024 notice to cease. A notice to cease is a contractual obligation, not a statutory one. As plaintiff correctly argues, the notice requirement in N.J.S.A. 2A:18-53(c)(4), and the corresponding

9

specificity rule of Carteret, does not apply to notices to cease—rather, the statutory requirement applies only to notices to quit. See Ivy Hill, 236 N.J. Super. at 570. Instead, the sufficiency of the May 2024 notice to cease should be judged according to the contractual plain language of the lease agreement. The language of the lease does not require the landlord to specify the nature of the breach. The lease refers only to "receipt of notice from the Landlord to comply with and perform any such conditions and covenants" and provides fifteen days to cure the breach. The May 2024 notice to cease pointed out the two lease provisions being violated (Section 3 and Section 25) and instructed defendant to cease "operating as a retailer in the leased premises immediately," which was a "direct violation of the lease agreement." Accordingly, this notice was sufficient notice pursuant to the terms of the lease agreement.

Furthermore, the notice to quit plainly satisfied the specificity requirement of N.J.S.A. 2A:18-53(c)(4) and Carteret. It mentioned the notice to cease sent in May and stated defendant "has not cured the breaches or ceased the unauthorized activities as directed, continuing to operate retail activities in the building." The notice to quit also specifically described the breaching conduct by pointing to the October 25, 2024 retail sale of cashmere

A-2633-24

to a private investigator, whose report and video of the sale were attached to the notice.

The court erred in finding the notice to quit deficient because of an apparent computer anomaly that caused letters and numbers to be omitted from the document's text in certain areas. The document was still entirely legible, and plaintiff maintains the errors were caused by uploading the document to eCourts and the notice received by defendant did not contain the errors. The court erred in dismissing the case sua sponte on this basis when the notice to quit plainly satisfied the statutory standard.

Because both the notice to cease and the notice to quit were sufficient, the remaining question for the court on remand is whether defendant violated the covenants in Sections 3 and 25 prohibiting retail sales, and if it did, whether its claimed defenses prevent eviction. This issue was not resolved because the court sua sponte dismissed the case before either party had the opportunity to present its case. While a motion for an involuntary dismissal pursuant to Rule 4:37-2 is available in the Special Civil Part, see R. 6:5-1, a party may move for it only after the opposing party has finished presenting its case. The court therefore erred by dismissing the motion sua sponte in the middle of plaintiff's case.

A-2633-24

Reversed and remanded for a new trial consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M. C. Hanley

Clerk of the Appellate Division